**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

BENJAMIN VIENT,                )
                               )
          Plaintiff,           )
                               )
     v.                        )          1:19CV2
                               )
PAXTON MEDIA GROUP,[1]         )
                               )
          Defendant.           )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the Court on "Defendants' Motion for Summary Judgment" (Docket Entry 125 (the "Summary Judgment Motion")) and "Defendants' Motion to Show Cause and for Contempt" (Docket Entry 130 (the "Contempt Motion")). For the following reasons, the Court should (i) grant in part and deny in part the

_____

1     Eric L. Rudolph, Vice President of Paxton Media Group ("Paxton") (Docket Entry 84-5, ¶ 2), submitted a declaration clarifying that Paxton manages *The Sanford Herald* via one of Paxton's wholly owned subsidiaries, PMG Community Newsgroup, LLC (id., ¶ 3). The Court (per the undersigned United States Magistrate Judge) thereafter deemed Paxton "a Defendant in its capacity as the ultimate owner of Defendant Sanford Herald (through PMG Community Newgroup, LLC) and thus the real party in interest" (Text Order dated Jan. 29, 2021). *The Sanford Herald* qualifies as one of Paxton's assumed names. (See Docket Entry 63, ¶ 2.) As Paxton has recognized (see, e.g., Docket Entry 126 at 1-2 ("Sanford Herald is a newspaper, *The Sanford Herald*, not a separate legal entity.")), "[u]sing d/b/a or 'doing business as' to associate an assumed or fictitious name with a corporation does not, without more, create a separate legal entity different from the corporation," Snowden v. Checkpoint Check Cashing, 290 F.3d 631, 634 n.2 (4th Cir. 2002) (quoting 8 Fletcher Cyclopedia of the Law of Corporations § 3831 (revised ed. 1992 & Supp. 1999)). In light of the foregoing, this Memorandum Opinion uses the term "Defendant" to refer to Paxton, including when describing filings that occurred before recognition of Paxton's role in this action.

Contempt Motion, dismissing Plaintiff's claims with prejudice, and (ii) deny the Summary Judgment Motion as moot.

**BACKGROUND**

### I. Factual and Procedural History

Benjamin Vient (the "Plaintiff"), acting pro se, initiated this action pursuant to 17 U.S.C. § 101. (See Docket Entry 1 (the "Original Complaint") at 1.)[2] As the Court (per Chief United States District Judge Thomas D. Schroeder) previously explained, the Original Complaint alleges copyright infringement involving an article authored by Plaintiff that appeared on December 23, 2015, in *The Sanford Herald*, a newspaper covering Sanford, North Carolina. (See Docket Entry 73 at 2.)[3]

### A. Amendments, Allegations, and Answer

Multiple rounds of dismissal motions and amendments followed the filing of the Original Complaint. (See Docket Entries 12, 15, 18, 22, 24, 30, 41, 47, 50.) The Court (per the undersigned United States Magistrate Judge) ultimately allowed Plaintiff to file his

---

2 At Plaintiff's request (see Docket Entry 49), the Court (per the undersigned) authorized him to make and receive electronic filings in this action (see Text Order dated Feb. 25, 2020 (granting Plaintiff's request to "register as a CM/ECF Filing User in the CM/ECF System solely for the purpose of the action" (quoting M.D.N.C. LR 5.3(c)(2)))).

3 Although Plaintiff named Rachael Raney as a defendant (see, e.g., Docket Entry 59 at 1), the Court (per Chief Judge Schroeder) dismissed any claims against her for lack of personal jurisdiction. (See Docket Entry 73 at 5-9, 12.)

2

proposed second amended complaint (Docket Entry 59 (the "Operative Complaint")). (See Docket Entry 57 at 14-17.)[4]

According to the Operative Complaint:

Plaintiff registered several works with the United States Copyright Office (see Docket Entry 59 at 1), including an article (the "Work") entitled "On the Rails: Gliding into the holidays, Pt. 2" (id. at 4 (all-caps font omitted)), which the Operative Complaint describes as "listing number 8" (id. at 1). Plaintiff maintained a "previous freelance agreement" (id.) with Paxton Media Group (the "Defendant") that authorized "one publication of each submission" (id. (internal quotation marks omitted)) but forbid "reproduction" (id. (internal quotation marks omitted)). In 2018, Plaintiff discovered "that Defendant ha[d] reproduced [his] work without authorization, ha[d] distributed [his] work without authorization and ha[d] displayed [his] work without authorization." (Id.; see also id. (alleging "multiple reproduction violations of 17 U.S.C. §[ 106(1)], multiple

---

4    In that same Memorandum Opinion, the undersigned denied Plaintiff's requests for expedited discovery (see id. at 8-11 (discerning no basis to authorize discovery prior to adoption of scheduling order)) and for a "more definite statement" (id. at 13; see id. at 13-14 (noting that Plaintiff had invoked Federal Rule of Civil Procedure 12(e), which governs more definite statements in pleadings, despite seeking information about non-pleadings)). The undersigned also recommended that the Court deny Plaintiff's motion for preliminary injunctive relief (see id. at 11-13) and deny as moot the then-pending motions to dismiss (see id. at 17-18), which recommendations the Court (per Chief Judge Schroeder) adopted (see Docket Entry 64).

distribution violations of 17 U.S.C. §[ 106(3)], and multiple display violations of 17 U.S.C. §[ 106(5)]").) Moreover, Defendant failed to "properly pa[y] Plaintiff for his labor and works, according to agreement." (Id.) As relief, Plaintiff has sought "damages and statutory damages" (id. at 2), as well as

> preliminary and permanent injunctive relief; a truthful, independent accounting of usage of Plaintiff['] s works; Plaintiff['] s legal fees and costs, including costs of work suffered (additional labor hours required to correct to [sic] the labor agreement); other damages and relief related to the infringement of Plaintiff['] s intellectual property and other actions, and further legal and equitable relief as the Court deems just and proper

(id.).

Defendant answered the Operative Complaint, admitting the existence of a licensing argument under which "[Plaintiff] gave consent to Paxton Media Group d/b/a *The Sanford Herald* to publish the Work once." (Docket Entry 63 (the "Answer"), ¶ 2.)[5] Defendant initially limited access to the Work to direct subscribers (id.), but, on December 23, 2015, "the [ W]ork was uploaded to NewsBank" (id., ¶ 3), a digital archive created pursuant to an agreement between *The Sanford Herald* and NewsBank (see id., ¶ 2). NewsBank provided Defendant with a report (see Docket Entry 63-3 at 1) revealing 11 instances of access to the Work via NewsBank (see id.;

---

5 Although the filing of the Answer preceded the proposed amendment by which the undersigned characterized Paxton as "the real party in interest" (Text Order dated Jan. 29, 2021), that same order "deemed [the Answer] amended in corresponding fashion, such that Defendant Paxton [] has answered [the Operative Complaint] in the same manner as Defendant Sanford Herald" (id.).

see also Docket Entry 63, ¶ 3 (explaining that two such views occurred by Defendant after Plaintiff initiated this action and asserting, upon information and belief, that access by Plaintiff resulted in all other views)).  Defendant further admitted that archival of the Work on December 23, 2015, arguably violated the agreement with Plaintiff but denied his entitlement to relief on statute-of-limitations grounds.  (See Docket Entry 63, ¶¶ 4-5.) According to the Answer, "Plaintiff registered his copyright [on] February 4, 2018, more than two years after it was first published by [P]laintiff - well beyond the three-month deadline fixed by 17 U.S.C. § 412."  (Id., ¶ 8; see also Docket Entry 63-2 (search result from Public Catalog of United States Copyright Office documenting registration of, inter alia, the Work).)

Plaintiff then sought leave to amend the Operative Complaint (see Docket Entry 66) and moved for "court mediation" (see Docket Entry 70).  The Court (per Chief Judge Schroeder) denied Plaintiff's requests.  (See Docket Entry 73 at 9-12 (deeming proposed amendment futile, rejecting request for court-ordered mediation as noncompliant with this Court's Local Rules, and denying then-pending motion to transfer venue).)

### B. Defendant's Discovery Motion and Sanctions Motion

Following that ruling, the parties submitted individual reports pursuant to Federal Rule of Civil Procedure 26(f) ("Rule 26(f)"), reflecting their participation in a Rule 26(f) conference

5

on September 9, 2020. (See Docket Entries 77, 78.) During the subsequent initial pretrial conference (see Minute Entry dated Sept. 28, 2020), the Court (per the undersigned) issued a scheduling order (see Text Order dated Sept. 28, 2020). Because Plaintiff had not, as of the initial pretrial conference, "ma[d]e the initial disclosures [required by Federal Rule of Civil Procedure 26(a)(1)(A)] at or within 14 days after the parties' Rule 26(f) conference," Fed. R. Civ. P. 26(a)(1)(C), the undersigned directed Plaintiff, by October 2, 2020, to serve such disclosures on Defendant (see Text Order dated Sept. 28, 2020).

Several weeks later, Defendant moved to compel Plaintiff's compliance with that mandate and sought sanctions (see Docket Entry 80 ("Defendant's Discovery Motion"); see also Docket Entry 81 (supporting memorandum)), which relief the undersigned granted (see Text Order dated Dec. 15, 2020). As grounds for that ruling, the undersigned noted the two lapsed deadlines for Plaintiff to provide initial disclosures, including a computation of damages. (See id. (identifying initial deadline of September 23, 2020, following the Rule 26(f) conference, and court-ordered deadline of October 2, 2020).) After the undersigned set the latter deadline, the following exchanges occurred between the parties:

- Plaintiff emailed counsel for Defendant ("Defendant's Counsel"), disclosing his computation of damages as "damages related to non-payment regarding unauthorized

6

uses of his works, breaches of contract, and copyright infringement" (id. (quoting Docket Entry 80-1 at 2)), "damages of court costs and legal fees as necessary" (id. (same)), and "damages of labor and time to correct to [sic] agreement" (id. (same));

- Defendant's Counsel responded by email, identifying deficiencies in Plaintiff's computation of damages and requesting that Plaintiff supplement by October 14, 2020 (see id. (discussing Docket Entry 80-2));

- Plaintiff responded with the same information as before, suggesting that Defendant could consult "the Agreement and records of email documents" to discern Plaintiff's damages (see id. (quoting Docket Entry 80-3));

- the parties thereafter exchanged another pair of emails in which Defendant's Counsel again disputed the adequacy of Plaintiff's initial disclosures and Plaintiff repeated the same information regarding his supposed damages (see id. (discussing Docket Entries 80-4, 80-5)); and

- a follow-up phone call between Defendant's Counsel and Plaintiff yielded no results (see id. (referencing Docket Entry 80-6 (email memorializing substance of phone call, including agreed-upon deadline of October 30, 2020)); see also Docket Entry 80 at 3 ("As of [November 5, 2020], [] Plaintiff has not supplemented his initial disclosures to

7

include a damages calculation and identification or production of the documents he contends will support that calculation.")).

"[T]he foregoing documentation of Defendant's diligent efforts to obtain a proper initial disclosure regarding Plaintiff's damages computation" (Text Order dated Dec. 15, 2020) contradicted Plaintiff's assertion (in his response to Defendant's Discovery Motion) that Defendant failed to confer with Plaintiff on that subject (see id. (discussing Docket Entry 86)). Even the supplemental disclosure that Plaintiff referenced in (but did not attach to) his response fell short of the requirements of Federal Rule of Civil Procedure 26(a)(1)(A)(iii) (see id. (reviewing Docket Entry 96-1, which Defendant provided in reply)).

Under those circumstances, and upon review of the law governing computation of damages, the undersigned granted Defendant's Discovery Motion, ordering Plaintiff, by December 22, 2020, to "serve a proper initial disclosure under Federal Rule of Civil Procedure 26(a)(1)(A)(iii)" (id.) and warning him that failure to comply would "result in additional sanctions, as provided by Federal Rule of Civil Procedure 37(b)(2)" (id.). The undersigned also ordered expense-shifting pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). (See id. ("find[ing] no substantial justification for [Plaintiff's] failure to make a proper disclosure and/or his belated disclosure and no

8

circumstances that otherwise would render expense-shifting unjust").) However, the undersigned "afford[ed] Plaintiff an opportunity to address the amount of Defendant's reasonable expenses" by requiring that Defendant, by December 22, 2020, serve Plaintiff with a statement of reasonable expenses (the "Discovery Statement") incurred in connection with Defendant's Discovery Motion. (See id.) That text order directed (i) Plaintiff, by December 29, 2020, to file a notice indicating his intent to pay Defendant's expenses or object to the reasonableness of the same and (ii) Defendant, by January 5, 2021, to respond to any timely objection. (See id.)

Plaintiff objected to "the reasonableness of Defendant Motioning against pro-se Plaintiff" (Docket Entry 103 at 2), noting Defendant's proposed rates (see id. at 1–2) and explaining that he had provided computations of damages "to the best of [his] understanding" (id. at 2). Plaintiff also requested a hearing (id.) and attached (as an exhibit) an email that he sent to Defendant's Counsel regarding his initial disclosures (see Docket Entry 103-1 (email dated Nov. 19, 2020)). Defendant responded, attaching, inter alia, the Discovery Statement (Docket Entry 105-1), which Defendant served on Plaintiff "by U.S. mail and email" (id. at 3) and by which Defendant had requested $5,932.50 (see Docket Entry 105 at 2). After rejecting Plaintiff's request for an extension of time to reply to Defendant's filing (see Text Order

9

dated Jan. 19, 2021 (denying Docket Entry 108)), the Court (per the undersigned) ordered "Plaintiff . . . pursuant to Federal Rule of Civil Procedure 37(a)(5)(A) . . . to pay Defendant, on or before [March 1, 2021], $5,932.50 as the reasonable expenses Defendant incurred in litigating [Defendant's Discovery Motion]" (Text Order dated Jan. 28, 2021).

Around that same time, Defendant filed a motion (Docket Entry 106 (the "Sanctions Motion")), asserting that Plaintiff had not complied with the Court's directive "to 'serve a proper initial disclosure under Federal Rule of Civil Procedure 26(a)(1)(A)(iii) by [December 22, 2020]'" (id. at 1 (quoting Text Order dated Dec. 15, 2020); see also Docket Entry 107 (supporting memorandum)). As relief, Defendant requested "an order dismissing the [Operative] Complaint or, in the alternative, striking Plaintiff's claim for actual damages [pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(iii) ('Rule 37(b)(2)(A)(iii)')] and prohibiting Plaintiff from claiming or presenting evidence of such damages in this action [pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(ii) ('Rule 37(b)(2)(A)(ii)')]." (Docket Entry 106 at 3.) Defendant also sought expense-shifting. (See id.) The undersigned recommended granting Defendant's alternative request for relief, i.e. by "prohibiting Plaintiff from presenting evidence of actual damages under Rule 37(b)(2)(A)(ii) and striking Plaintiff's claim for actual damages under Rule 37(b)(2)(A)(iii)"

(Text Recommendation dated Feb. 17, 2020; <u>see also</u> <u>id.</u> (deeming such "sanction proportional to Plaintiff's noncompliance")), given Plaintiff's repeated "fail[ure] to serve a proper supplemental [damages] disclosure" (<u>id.</u>). The undersigned also recommended that the Court grant Defendant's request for expense-shifting pursuant to Federal Rule of Civil Procedure 37(b)(2)(C) because Plaintiff had not offered "any substantial justification for his non-compliance" (<u>id.</u>), or identified "any other circumstances that would make payment of such expenses unjust" (<u>id.</u>).

The Court (per Chief Judge Schroeder) adopted those recommendations (<u>see</u> Docket Entry 134 at 2) after rejecting Plaintiff's objection (Docket Entry 127) as conclusory (<u>see</u> Docket Entry 134 at 1–2). The following day, the undersigned ordered Defendant, by April 9, 2021, to serve Plaintiff with a statement of reasonable expenses (the "Sanctions Statement") incurred in connection with the Sanctions Motion. (<u>See</u> Text Order dated Apr. 3, 2021.) As with Defendant's Discovery Motion, that text order likewise provided an opportunity for Plaintiff to object to the amount of the Sanctions Statement and for Defendant to respond to any objection. (<u>See</u> <u>id.</u> (directing Plaintiff, by April 16, 2021, to file notice indicating intent to pay expenses or objection to amount and setting response deadline).)

The Sanctions Statement, which Defendant served on Plaintiff "by U.S. Mail and email" (Docket Entry 142-1 at 3), requested

11

$3,135.00 (see id. at 1-2). "[Plaintiff] object[ed] to the reasonableness of Defendant's expenses" (Docket Entry 141 at 1), asserting that "Defendant's expenses would not be so, if Defendant respected Plaintiff's request to provide the specific objection" (id.). Upon review of those filings, the undersigned (i) noted that Plaintiff had attempted to reargue the Sanctions Motion via his objection, (ii) deemed the amount of expenses reasonable, and (iii) ordered Plaintiff, by May 7, 2021, to pay Defendant $3,135.00. (See Text Order dated Apr. 23, 2021.)

About a month later, the undersigned issued a text order "requiring Plaintiff to file, on or before [May 28, 2021], EITHER (A) a notice (with attached documentation) showing that he paid Defendant $3,135 as mandated by the Text Order dated [April 23, 2021], OR (B) a memorandum of no more than ten pages showing cause why the Court should not impose sanctions under Federal Rule of Civil Procedure 37(b)(2)(A), including dismissal of this action." (Text Order dated May 23, 2021.) Plaintiff sought additional time to comply with that mandate (see Docket Entry 146), which the undersigned granted in part (see Text Order dated May 29, 2021 (resetting deadline for June 4, 2021)). Despite that extension, Plaintiff never complied with the directives of the earlier text order. (See Docket Entries dated May 23, 2021, to present.)

Plaintiff did, however, file a document entitled "Motion for More Definite Statement" (Docket Entry 147; see also Docket Entry

12

148 (supporting memorandum)), invoking Federal Rule of Civil Procedure 12(e).  The undersigned denied that motion, observing that (i) "Federal Rule of Civil Procedure 12(e) authorizes '[a] party [to] move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response'" (Text Order dated June 26, 2021 (quoting Fed. R. Civ. P. 12(e))) and (ii) Plaintiff had sought clarification from Defendant regarding a text order, not a pleading (see id.).  In any event, the undersigned emphasized the lack of vagueness or ambiguity in the text order, which (partially) granted Plaintiff the extension he had requested (see id.).  Finally, to the extent Plaintiff had suggested (with reference to settlement discussions) that Defendant no longer sought money from him, the undersigned noted Defendant's consistent pursuit of expense-shifting and directed Plaintiff not to file mediation material with the Court.  (See id.)

### C. Motion for Protective Order

During discovery, Defendant moved "for entry of a protective order regarding certain deposition notices issued by [] Plaintiff in this matter" (Docket Entry 84 (the "Motion for Protective Order") at 1) and again sought sanctions (see id. at 7; see also Docket Entry 85 (supporting memorandum)).  The Court (per the undersigned) set a telephonic hearing on the Motion for Protective

13

Order (see Text Order dated Nov. 18, 2020),[6] which occurred on November 25, 2020 (see Minute Entry dated Nov. 25, 2020).[7]

During that hearing, the undersigned resolved Defendant's objections to the deposition notices, ruling against Plaintiff on all disputed issues. (See id.)[8] Consistent with that resolution, the undersigned deemed expense-shifting warranted, gave Plaintiff an opportunity to object in that regard, and directed Defendant, by December 4, 2020, to serve Plaintiff with a statement of reasonable expenses ("Protective Order Statement") incurred in connection with

---

6  Within days of that order, Plaintiff filed two motions to compel discovery (see Docket Entries 87, 88), both of which the undersigned denied "for failure to file a supporting brief as required by Local Rule 7.3(a) and (j)." (Text Orders dated Nov. 23, 2020.)  Immediately on the heels of those denials, Plaintiff filed a third motion to compel discovery (see Docket Entry 89; see also Docket Entry 90 (supporting memorandum)), which the undersigned denied for failure to attach the relevant discovery material "as required by Local Rule 26.1(b)" (Text Order dated Nov. 23, 2020) and for failure to comply with Local Rule 7.2(a) (see id.).  The following day, Plaintiff renewed his motion to compel discovery (see Docket Entry 91; see also Docket Entry 92 (supporting memorandum)), which he subsequently amended (see Docket Entry 94; see also Docket Entry 95 (supporting memorandum)).

7  The Clerk's Office audio-recorded the hearing. (See Minute Entry dated Nov. 25, 2020.)  In preparing this Memorandum Opinion, the undersigned used that recording to confirm exactly what transpired.  The description that follows above includes references to the topics of discussion in order to provide as full a picture as possible without delaying matters to obtain a transcript.

8  The undersigned also warned Plaintiff about the abusive nature of his serial motions to compel. (See id.; see also Text Order dated Nov. 25, 2020 ("Plaintiff has been warned that any further filings that abuse the judicial process or violate electronic filing procedures shall result in the removal of his authorization to participate in the electronic filing system.").)

the Motion for Protective Order. (See id.; see also Text Order dated Nov. 25, 2020.) That order also provided an opportunity for Plaintiff to object to the amount of the Protective Order Statement and for Defendant to respond to any objection. (See Text Order dated Nov. 25, 2020 (directing Plaintiff, by December 11, 2020, to file notice indicating intent to pay expenses or objection to amount and setting response deadline).)

Plaintiff did not comply with that directive. (See Docket Entries dated Nov. 25, 2020, to Dec. 11, 2020.) Instead, on the deadline to file a notice or objection, Plaintiff sought an unspecified extension (see Docket Entry 99), which the undersigned denied because "Plaintiff failed to identify what deadline he wished for the Court to extend and/or to give any basis (let alone 'good cause' under Federal Rule of Civil Procedure 6(b)(1)) for any extension") (Text Order dated Dec. 11, 2020).

Thereafter, the undersigned ordered Defendant to file the Protective Order Statement "along with documentation showing that it served that statement on Plaintiff in a timely manner" (Text Order dated Dec. 16, 2020) and gave Plaintiff an opportunity to challenge "Defendant's showing of timely service" (id.). Defendant complied the following day. (See Docket Entry 100-1 at 3 (certifying service of Protective Order Statement "by U.S. Mail and email"); see also Docket Entry 100 at 1 (requesting $4,335.00); Docket Entry 100-1 at 1–2 (providing calculations).) Plaintiff

never contested Defendant's showing of timely service. (<u>See</u> Docket Entries dated Dec. 17, 2020, to present.) Accordingly, the undersigned ordered "Plaintiff . . . pursuant to Federal Rules of Civil Procedure 26(c)(3) and 37(a)(5)(A) . . . to pay Defendant, on or before [March 1, 2021], $4,335 as the reasonable expenses Defendant incurred in litigating [the] Motion for Protective Order." (Text Order dated Jan. 28, 2021.)

### D. Plaintiff's Discovery Motion

As already mentioned, Plaintiff has filed numerous motions to compel discovery, two of which remained pending after the hearing on the Motion for Protective Order. (<u>See</u> Docket Entries 91, 94 ("Plaintiff's Discovery Motion").) The Court (per the undersigned) ultimately treated the latter motion as superseding the former. (<u>See</u> Text Order dated Jan. 29, 2021.)

Via Plaintiff's Discovery Motion, "Plaintiff moved to compel '1) usage details of Plaintiff's works, including with third[]parties and 2) third-party agreements that involve the works, which correspond with Mr. Eric Rudolph's Affidavit in this case record'" (Text Order dated Jan. 29, 2021 (quoting Docket Entry 94)). However, the undersigned noted that Plaintiff had "failed to identify . . . what discovery requests entitle[d] him to such compelled production" (<u>id.</u>). After concluding that, in any event, Defendant had responded reasonably to Plaintiff's requests, the undersigned denied Plaintiff's Discovery Motion and ordered

16

expense-shifting under Federal Rule of Civil Procedure 37(a)(5)(B). (See id.)  In an accompanying text order, the undersigned directed Defendant, by February 5, 2021, to serve Plaintiff with a statement of reasonable expenses (the "Response Statement") incurred in connection with Plaintiff's Discovery Motion.  (See Text Order Jan. 29, 2021.)  That order allowed (i) Plaintiff, by February 12, 2021, to object to the amount of the Response Statement, and (ii) Defendant, by February 19, 2021, to respond to any timely objection.  (See id.)

Defendant timely served the Response Statement on Plaintiff "by U.S. Mail and email" (Docket Entry 121-1 at 3), requesting $2,730.00 (see id. at 1–2).  On February 9, 2021, Plaintiff moved the Court to reconsider its denial of Plaintiff's Discovery Motion or, alternatively, treat the reconsideration request as a renewed motion to compel.  (See Docket Entry 114 (the "Reconsideration Motion"); see also Docket Entry 115 (supporting memorandum).) Shortly thereafter, Plaintiff filed a document (i) purporting to object to the amount of the Response Statement (see Docket Entry 120 at 1), (ii) referencing Plaintiff's Discovery Motion and the Reconsideration Motion (see id.), and (iii) requesting "a stay of deadlines" (id.).  Defendant replied.  (See Docket Entry 121.)

The undersigned denied the Reconsideration Motion, deeming the request "[im]proper [because] it only asks the Court to rethink its prior decision, or [attempts to] present[] a better or more

17

compelling argument that [Plaintiff] could have presented in the original briefs on the matter" (Text Order dated Feb. 17, 2021 (some brackets in original) (quoting <u>Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys. Inc.</u>, No. 1:05CV955, 2011 WL 6934696, at *2 (M.D.N.C. Dec. 30, 2011) (unpublished) (internal quotation marks omitted))). The undersigned also rejected as untimely Plaintiff's alternative request to renew Plaintiff's Discovery Motion because Plaintiff had filed the Reconsideration Motion after the close of discovery. (<u>See</u> <u>id.</u>)

Regarding Plaintiff's objections to the Response Statement, the undersigned noted that "Plaintiff [had] failed to identify therein anything objectionable about the amount of expenses claimed by Defendant" (Text Order dated Feb. 17, 2021).[9] The undersigned also treated as moot any objection premised on the Reconsideration Motion. (<u>See</u> <u>id.</u> (referencing previous text order dated Feb. 17, 2021).) Under those circumstances, and in light of Defendant's submissions (<u>see</u> Docket Entries 121, 121-1, 121-2), the undersigned ruled the amount of expenses reasonable and ordered Plaintiff, by March 22, 2021, to pay Defendant $2,730.00. (<u>See</u> Text Order dated Feb. 17, 2021.)

---

9  This citation refers to a different text order than the previous citation, as the undersigned issued four text orders and one text recommendation on February 17, 2021, addressing Plaintiff's various filings.

On February 28, 2021, Plaintiff again asked the Court to reconsider Plaintiff's Discovery Motion (and the Reconsideration Motion). (See Docket Entry 123; see also Docket Entry 124 (supporting memorandum).) The undersigned summarily denied that request on the same grounds as the earlier denial of the Reconsideration Motion. (See Text Order dated Mar. 1, 2021.) A few weeks later, Plaintiff sought sanctions "in the interest of good faith, due process, and equal protection" (Docket Entry 128 (standard capitalization applied); see also Docket Entry 129 (supporting memorandum)). The undersigned likewise denied that motion after noting that Plaintiff "ha[d] sought to obtain reconsideration (for a third time) of the denial of [Plaintiff's Discovery] Motion" (Text Order dated Apr. 24, 2021).

As concerns the deadline of March 22, 2021, for Plaintiff to pay the expenses that Defendant incurred in connection with Plaintiff's Discovery Motion, the undersigned issued a text order "requiring Plaintiff to file, on or before [May 3, 2021], EITHER (A) a notice (with attached documentation) showing that he paid Defendant $2,730 as mandated by the Text Order dated [February 17, 2021], OR (B) a memorandum of no more than ten pages showing cause why the Court should not impose sanctions under Federal Rule of Civil Procedure 37(b)(2)(A), including dismissal of this action." (Text Order dated Apr. 26, 2021.) Plaintiff did not comply with

19

that directive.  (<u>See</u> Docket Entries dated Apr. 26, 2021, to present.)

### E. Additional Motions by Plaintiff

Plaintiff's Discovery Motion, which (like his repetitive pursuit of reconsideration thereof) lacked merit for the reasons discussed in the previous subsection, exemplifies Plaintiff's filings over the past year.  More specifically:

On January 22, 2021, Plaintiff moved for sanctions against Defendant and requested a hearing (<u>see</u> Docket Entry 109; <u>see also</u> Docket Entry 110 (supporting memorandum)), which the undersigned denied because the ethical rule Plaintiff had sought to enforce "imposes a duty on counsel to reasonably comply with requests for information from clients, not opposing parties" (Text Order dated Jan. 28, 2021 (describing scope of North Carolina Rule of Professional Conduct 1.4(a)(4))).  Thus, the undersigned deemed Plaintiff's request frivolous and "caution[ed him] to take more care in filing motions (particularly motions seeking sanctions), as the filing of frivolous motions constitutes grounds for sanctions against the filer under Federal Rule of Civil Procedure 11."  (<u>Id.</u>)

On February 9, 2021, Plaintiff moved for a "Court Equity Hearing" (Docket Entry 112; <u>see also</u> Docket Entry 113 (supporting memorandum)).  The undersigned denied that request after noting Plaintiff's failure to "provide[] any explanation for what a 'Court Equity Hearing' is, much less any authority requiring the Court to

hold any such hearing." (Text Order dated Feb. 17, 2021.) In any event, the undersigned deemed the motion frivolous insofar as Plaintiff had sought "to re-litigate the Court's prior determination that North Carolina Rule of Professional Conduct 1.4(a)(4) addresses the obligations of counsel to their clients, not to opposing litigants" (id.). In connection with that ruling, "[t]he [undersigned] caution[ed] Plaintiff in the strongest possible terms to immediately cease and desist his vexatious approach to this litigation." (Id.) That text order expressly warned Plaintiff that "[f]ailure . . . to reform his conduct will result in the imposition of sanctions, up to and including dismissal of this action." (Id.)

On the same day that he filed the foregoing (meritless) motion, Plaintiff (belatedly) moved to extend the discovery deadline. (See Docket Entry 116; see also Docket Entry 117 (supporting memorandum).) The undersigned denied that request because Plaintiff had demonstrated neither excusable neglect nor good cause. (See Text Order dated Feb. 17, 2021.)

On April 4, 2021, Plaintiff filed a motion entitled "Motion to Continue Mediation" (Docket Entry 135 (the "Mediation Motion"); see also Docket Entry 136 (supporting memorandum)), which the undersigned denied because Plaintiff had not shown a change in circumstances since the previous court-ordered mediation resulted in an impasse (see Text Order dated Apr. 15, 2021). On April 23,

21

2021, Plaintiff sought to renew the Mediation Motion. (See Docket Entry 145.) The undersigned again denied relief, (i) identifying Plaintiff's noncompliance with this Court's Local Rules (see Text Order dated Apr. 24, 2021 (flagging failure to file supporting brief with supporting authority and referencing Text Order dated Apr. 23, 2021)), (ii) treating Plaintiff's request as an improper motion for reconsideration (see id.), (iii) noting Plaintiff's ability to resume mediation with Defendant's consent (see id.), and (iv) repeating the previous "warn[ing to] Plaintiff that any continued filing of procedurally improper and substantively frivolous motions will constitute still more justification for sanctions (including dismissal of this action), beyond the justifications already manifest in the record" (id.).

### F. Instant Motions

On March 17, 2021, Defendant filed the Contempt Motion, seeking relief for Plaintiff's noncompliance with the orders obligating him to "pay certain expenses incurred by [ D]efendant[] regarding discovery motions, and directing [that] such payment be made by March 1, 2021." (Docket Entry 130 at 1; see also Docket Entry 131 at 2 (discussing text orders dated January 28, 2021, which required payment of $5,932.50 and $4,335, for Defendant's Discovery Motion and Protective Order Motion, respectively).) In support of the Contempt Motion, Defendant attached declarations from Paxton's Vice President Eric L. Rudolph ("Rudolph") (see

22

Docket Entry 130-1), and from Defendant's Counsel (see Docket Entry 130-2 at 1–2), as well as copies of two emails sent by Defendant's Counsel to Plaintiff (see id. at 3 (email dated February 16, 2021); id. at 4–5 (email dated March 10, 2021)). As relief, Defendant has sought (1) "coercive sanctions . . . possibly including imprisonment and/or fines if [P]laintiff persists in his failure to comply" (Docket Entry 130 at 3); (2) "a corrective sanction" shifting expenses for the Contempt Motion (id.); and (3) "such other relief as the Court may deem just and proper" (id.). Plaintiff responded (see Docket Entry 137), and Defendant replied (see Docket Entry 139).[10]

Defendant also has moved for summary judgment (see Docket Entry 125; see also Docket Entry 126 (supporting memorandum)), attaching as exhibits another declaration from Rudolph (Docket Entry 125-1 at 1–4), a copy of the Work (id. at 5), the above-mentioned report from Newsbank (id. at 6), the results of a public records search (id. at 7), a copy of Defendant's "First Requests for Admission and First Set of Interrogatories to Plaintiff Benjamin Vient" (Docket Entry 125-2 (standard capitalization applied)), and a copy of a "Notice of Plaintiff's Failure to

---

10 Plaintiff also tendered an unauthorized supplement (see Docket Entry 144), which the Court (per the undersigned) struck. (See Text Order dated Apr. 23, 2021 (warning Plaintiff that continued filing of "improper, unauthorized, and immaterial [documents] . . . will provide a further basis (beyond those already manifest in the record) for sanctions against Plaintiff, including dismissal of this action").)

Respond to Requests for Admission and Interrogatories" (Docket Entry 125-3 (standard capitalization applied)). Plaintiff responded in opposition (see Docket Entry 133), and Defendant replied (see Docket Entry 138).[11]

## II. The Record

As relevant to the Contempt Motion, the record reflects the following:

On February 16, 2021, Defendant's Counsel sent Plaintiff an email (to the email address listed in CM/ECF) with the subject line "payment instructions" (Docket Entry 130-2 at 3). That email notified Plaintiff about his obligation to pay "[D]efendant[] two amounts, $5,932.50 and $4,335[], on or before March 1, 2021" (id.) and directed him how to make such payment by check (see id.). That email further advised Plaintiff, in bolded text:

> We have had some discussions of a potential settlement that could impact your obligation to pay these amounts. Unless and until we have reached a final agreement altering your payment obligations, signed by all parties, you will be expected to make timely payment as ordered by the Court. No settlement offer or other statement by me or any other representative of [ D]efendant[] constitutes an agreement to defer, reduce or eliminate your court-ordered payment obligations.

(Id. (emphasis omitted).) The email concluded by advising Plaintiff to contact Defendant's Counsel "if [he] ha[d] any

---

11    As with the Contempt Motion, Plaintiff filed an unauthorized supplement (see Docket Entry 143), which the undersigned struck (see Text Order dated Apr. 23, 2021).

questions regarding how or where [he] should make the payments ordered by the Court." (Id.)

After the court-ordered deadline passed, Defendant's Counsel forwarded Plaintiff the foregoing email, at the same email address, explaining that Defendant had not received payment as of March 10, 2021. (See id. at 4–5.) Defendant's Counsel offered to arrange an electronic payment, to remedy any issue with mail delivery. (See id. at 4 ("Please let me know right away if payment has been sent, as it is possible a check could have been lost in the mail.").) Defendant's Counsel warned that Defendant would seek judicial intervention if Plaintiff did not respond by the close of business on the following day. (See id.)

As of March 17, 2021 (see id. at 2), "[Defendant's Counsel had] received no response from [Plaintiff] regarding [either] email" (id. at 1), despite "receiv[ing] at least 38 emails from [Plaintiff, via the email address listed in CM/ECF]" (id. at 2) between January 1, 2021, and March 17, 2021 (see id.). Moreover, "[Defendant's Counsel's] law firm ha[d] received no payments from [Plaintiff], and [Defendant's Counsel was not] aware of [any] attempts by [Plaintiff] to make payment to [Defendant's Counsel's] firm or [ D]efendant[]." (Id.) Rudolph likewise averred that "[n]either Paxton[ nor] PMG Community Newsgroup, LLC . . . ha[d] received any payment from [Plaintiff as of March 16, 2021], and

[Rudolph was not] aware of [any] attempts by [Plaintiff] to make any such payment." (Docket Entry 130-1 at 1.)

## DISCUSSION

### I. Relevant Standards

### A. Civil Contempt

"A court may impose sanctions for civil contempt 'to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy.'" _Cromer v. Kraft Foods N. Am., Inc._, 390 F.3d 812, 821 (4th Cir. 2004) (quoting _In re GMC_, 61 F.3d 256, 258 (4th Cir. 1995)).

> To establish civil contempt, a movant must show by clear and convincing evidence: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) the decree was in the movant's favor; (3) the alleged contemnor by its conduct violated the terms of the decree and had knowledge (at least constructive) of such violation; and (4) the movant suffered harm as a result.

_Redner's Mkts., Inc. v. Joppatowne G.P. Ltd. P'ship_, 608 F. App'x 130, 131 (4th Cir. 2015). "Once the movant establishes these elements, the burden shifts to the [alleged contemnor] to show 'good faith [in making] all reasonable efforts to comply with the [] order.'" _Consumer Fin. Prot. Bureau v. Klopp_, 957 F.3d 454, 461-62 (4th Cir. 2020) (quoting _United v. Ali_, 874 F.3d 825, 831 (4th Cir. 2017)).

Although "a court is not necessarily required to hold an evidentiary hearing before granting a civil contempt motion," _Redner's Mkts._, 608 F. App'x at 131, United States Magistrate

26

Judges must adhere to a certain procedure in punishing civil contempt. As relevant here:

> where . . . [an] act constitutes a civil contempt, the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

28 U.S.C. 636(e)(6)(B)(iii).

"The appropriate remedy for civil contempt is within the court's broad discretion. . . . Remedies include ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees." In re GMC, 61 F.3d at 259.

### B. Involuntary Dismissal

Federal Rule of Civil Procedure 41 provides for dismissal of an action "[i]f the plaintiff fails to prosecute or to comply with the[ Federal Rules of Civil Procedure] or a court order," Fed. R. Civ. P. 41(b) ("Rule 41(b)"). "Although Rule 41(b) does not itself provide for *sua sponte* dismissal, a district court has the inherent power to dismiss a case for lack of prosecution or violation of a court order." United States v. Merrill, 258 F.R.D. 302, 308 (E.D.N.C. 2009) (citing Link v. Wabash R.R. Co., 370 U.S. 626 (1962), and McCargo v. Hedrick, 545 F.2d 393 (4th Cir. 1976)); see

also <u>McCargo</u>, 545 F.2d at 396 ("A district court may dismiss an action for lack of prosecution, either upon motion by a defendant pursuant to [] Rule [] 41(b) or on its own motion."). "[T]hat judicial power derives from 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" <u>Attkisson v. Holder</u>, 925 F.3d 606, 625 (4th Cir. 2019) (quoting <u>Link</u>, 370 U.S. at 630-31).

Given the harshness of the sanction, "[involuntary dismissal] should be resorted to only in extreme cases." <u>McCargo</u>, 545 F.2d at 396 (internal quotation marks omitted); <u>see also</u> <u>Ballard v. Carlson</u>, 882 F.2d 93, 95 (4th Cir. 1989) ("[D]ismissal is not a sanction to be invoked lightly."). In deciding whether the circumstances warrant dismissal, courts should consider "(1) the plaintiff's degree of personal responsibility; (2) the amount of prejudice caused the defendant; (3) the presence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal." <u>Hillig v. Comm'r</u>, 916 F.2d 171, 174 (4th Cir. 1990).

## **II. Analysis**

Via the Contempt Motion, Defendant has requested "an order directing [P]laintiff [] to show cause why he should not be held in civil contempt for violating the Court's orders" (Docket Entry 130 at 1) requiring him to pay Defendant's expenses associated with Defendant's Discovery Motion and the Protective Order Motion (<u>see</u>

id. at 1–3).  According to Defendant, Plaintiff failed to pay any such expenses (<u>see</u> Docket Entry 131 at 3; <u>see also</u> Docket Entry 130-1, ¶ 4; Docket Entry 130-2, ¶ 6), despite the unambiguous orders directing him to do so (<u>see</u> Text Orders dated Jan. 28, 2021), and despite Defendant's efforts to obtain his compliance before and after the deadline (<u>see</u> Docket Entry 130 at 2 (referencing emails sent by Defendant's Counsel to Plaintiff); <u>see also</u> Docket Entry 130-2 at 3–5 (copies of emails)).

In response, Plaintiff has requested a "stay" of the Contempt Motion pending consideration of the Mediation Motion (<u>see</u> Docket Entry 137 at 1 (citing Docket Entry 135)), indicating that the parties agreed during mediation not to pursue expense-shifting (<u>see</u> <u>id.</u>).  However, in reply, Defendant has contended that "Defendant['s C]ounsel expressly informed [] Plaintiff that prior settlement discussions between the parties did not impact [] Plaintiff's obligation to pay the Court-ordered amounts." (Docket Entry 139 at 1; <u>see also</u> <u>id.</u> at 1–2 (excerpting bolded portion of February 2021 email from Defendant's Counsel and labeling Plaintiff as "less than candid" on that topic).)

For the following reasons, the Court should exercise its discretion to dismiss this action based on Plaintiff's longstanding pattern of noncompliance with court orders.  As Defendant has asserted (and shown by declaration (<u>see</u> Docket Entry 130-1, ¶ 4; Docket Entry 130-2, ¶ 6)), Plaintiff failed to pay Defendant's

29

expenses as ordered by the undersigned (see Text Orders dated Jan. 28, 2021). Notably, Plaintiff has not disputed that fact. (See Docket Entry 137 at 1 (purporting to respond to Contempt Motion by requesting stay pending consideration of Mediation Motion).) To the extent Plaintiff relied on the pendency of the Mediation Motion to excuse his failure to pay Defendant's expenses as ordered, the undersigned long ago denied the Mediation Motion (see Text Order dated Apr. 15, 2021 (denying Docket Entry 135)) and the subsequent (improper) request by Plaintiff to reconsider that ruling (see Text Order dated Apr. 24, 2021 (denying Docket Entry 145)).

Moreover, Plaintiff's failure to pay those expenses remains far from the only instance of noncompliance with court orders, some of which occurred after Defendant filed the Contempt Motion. For example, the undersigned also ordered Plaintiff to pay Defendant's expenses in connection with Plaintiff's Discovery Motion (see Text Order dated Feb. 17, 2021 (requiring payment of $2,730 by March 22, 2021)) and the Sanctions Motion (see Text Order dated Apr. 23, 2021 (requiring payment of $3,135 by May 7, 2021)). After those deadlines passed, the undersigned directed Plaintiff to file a notice documenting his payment of such expenses (see Text Order dated Apr. 26, 2021; Text Order dated May 23, 2021) or "a memorandum of no more than ten pages showing cause why the Court should not impose sanctions under Federal Rule of Civil Procedure 37(b)(2)(A), including dismissal of this action" (Text Order dated

30

Apr. 26, 2021; Text Order dated May 23, 2021).  To date, Plaintiff has not complied with those orders.  (<u>See</u> Docket Entries dated May 23, 2021, to present.)

Plaintiff's disregard for court orders related to expense-shifting mirrors his improper approach to other aspects of the litigation of this case.  For instance, he has repetitively raised the same arguments via motions for reconsideration (<u>compare, e.g.,</u> Docket Entry 115 (seeking reconsideration of Plaintiff's Discovery Motion), <u>with</u> Docket Entry 124 (same)), even after receiving instruction as to the impropriety of such filings (<u>see, e.g.,</u> Text Order dated Feb. 17, 2021 (denying Reconsideration Motion)).  Furthermore, he has committed serial violations of this Court's Local Rules (<u>see, e.g.,</u> Docket Entries 88 (motion unaccompanied by supporting brief), 145 (same)), notwithstanding the issuance of text orders explicitly reminding him of his obligations in that regard (<u>see, e.g.,</u> Text Order dated Apr. 23, 2021 (observing that "the Court repeatedly has advised Plaintiff[ that] he must follow the applicable rules")).[12]  Finally, the undersigned has cautioned Plaintiff about the possible consequences of his continued noncompliance (<u>see, e.g.,</u> Text Order dated Feb. 17, 2021), to no avail.

––––––––––––––––––

    12  Some violations occurred immediately after the undersigned issued such reminders.  (<u>See, e.g.,</u> Docket Entry 145 (filed Apr. 23, 2021).)

Although involuntary dismissal constitutes "a harsh sanction," McCargo, 545 F.2d at 396, application of the relevant factors, see Hillig, 916 F.2d at 174, warrants that result here. More specifically, as detailed above, (i) Plaintiff's failure to respond to numerous court orders leaves no reason to doubt that he bears responsibility for the noncompliance; (ii) Plaintiff's disregard of his obligations and the applicable procedural rules has forced Defendant to bear the expense of seeking appropriate relief and/or litigating Plaintiff's meritless motions (see, e.g., Docket Entry 106 (seeking to compel Plaintiff's compliance with twice-ordered initial disclosure)); (iii) Plaintiff has flouted deadlines even after requesting and receiving extensions, which "defied this [C]ourt's charge to secure the just, speedy, and inexpensive determination of the action," Merrill, 258 F.R.D. at 310; and (iv) no lesser sanction appears adequate given the various intermediate sanctions imposed to this point (i.e., limiting Plaintiff's evidence on damages and ordering Plaintiff, on four occasions, to pay Defendant's expenses). Plaintiff's refusal to comply with that latter obligation necessitates more drastic relief, as "[a]ny other course would [] place[] the credibility of the [C]ourt in doubt and invite[] abuse," Ballard, 882 F.2d at 96.[13]

---

13 In light of that proposed resolution, the undersigned declines to recommend the assessment of civil contempt sanctions. Consideration of such sanctions by the undersigned would result in a hearing before a United States District Judge, see 28 U.S.C. (continued...)

Dismissal on the foregoing grounds obviates the need to consider the merits of the Summary Judgment Motion. Accordingly, the Court should deny the Summary Judgment Motion as moot.

### CONCLUSION

Plaintiff has repeatedly defied this Court's orders, to include by failing to pay Defendant's expenses in connection with Defendant's Discovery Motion and the Motion for Protective Order. The above-described pattern of noncompliance, together with the ineffectiveness of lesser sanctions, warrants dismissal of Plaintiff's claims.

**IT IS THEREFORE RECOMMENDED** that the Contempt Motion (Docket Entry 130) be **GRANTED IN PART,** such that Plaintiff's claims should be dismissed with prejudice, and **DENIED IN PART,** as to the remaining requests for relief therein.

**IT IS FURTHER RECOMMENDED** that the Summary Judgment Motion (Docket Entry 125) be **DENIED AS MOOT.**


                                    /s/ L. Patrick Auld
                                **L. Patrick Auld**
                        **United States Magistrate Judge**
January 24, 2022

_____

13(...continued)
636(e)(6)(B)(iii), thus requiring Defendant (and the Court) to expend additional resources. Involuntary dismissal represents the better course under the circumstances.